IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM C. EVES, JR. | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No. 2:09-cv-00543 |
| v. | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| AIG, INC., et. al. | : | Magistrate Judge Abel |
| | : | |
| Defendants. | : | |

**OPINION & ORDER**

**I. INTRODUCTION**

This matter is before the Court on Defendants AIG, Inc. and AIG Domestic Claims, Inc.'s (collectively "AIG") Motion to Dismiss Plaintiff William C. Eves Jr.'s ("Eves") Complaint (Dkt. 13). Eves sued AIG and American International Specialty Lines Insurance Company ("AISLIC") alleging breach of contract (Count I) and bad faith (Count II), both arising from a professional liability insurance contract ("the Policy") issued to Eves. Defendants AIG, Inc. and AIG Domestic Claims, Inc. move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion is **GRANTED** as to Count I, and **DENIED** as to Count II.

**II. BACKGROUND**

On June 09, 2009, Eves filed his complaint alleging Counts I and II against AIG and AISLIC in the Franklin County Court of Common Pleas. The case was properly removed to this Court under the federal diversity jurisdiction statute, 28 U.S.C § 1332. This case arose in relation to a third party's ("Accu-Check") claim against Eves. Eves alleges that AIG breached the Policy and the duty of good faith owed to Eves by failing to negotiate and settle Accu-Check's claim against him.

1

Defendants AIG move to dismiss Eves' claims because they are not parties to the contract, and, as a matter of law, cannot be held liable for breach of contract or breach of a duty of good faith. Therefore, the issues before the Court are: 1) whether the lack of privity of contract precludes Eves' Counts I and II; and 2) if not, whether Eves' complaint contains sufficient allegations to state a claim for which relief can be granted under Fed. Civ. Rule 12(b)(6).

### III. STANDARD OF REVIEW

A case may be dismissed if the complaint does not state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6). "A motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). Consequently, the Court must construe the complaint in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008); *Murphy v. Sofamor Danek Gp., Inc.*, 123 F.3d 394, 400 (6th Cir. 1997). The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Although liberal, the Rule 12(b)(6) standard requires the complaint to assert more than the bare legal conclusions to survive a motion to dismiss. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993)(citation omitted). The complaint must "give the defendant fair notice of what the claim is, and the grounds upon which it rests." *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (*quoting Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). While a complaint need not contain

2

"detailed factual allegations," its "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556. A complaint that suggests "the mere possibility of misconduct" is insufficient; rather, the complaint must state "a plausible claim for relief." *Iqbal*, 129 S.Ct. at 1950 (citing *Twombly*, 550 U.S. at 556).

## IV. LAW & ANALYSIS

The federal court, sitting in diversity, applies the substantive law of the state in which the district court sits. *Erie R. Co v. Tompkins*, 304 U.S. 64, 78, (1938); *Hisrich v. Volvo Cars of North America, Inc.*, 226 F. 3d 445, 449 (6th Cir. 2000). "When the state's highest court has not decided the applicable law, the federal court must ascertain the state law from 'all relevant data'". *Id.* at n.3; (*citing Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995). Here, the contract was presumably executed in Ohio, and the alleged breach arose in Ohio; therefore, this Court will apply Ohio law.

### A. Breach of Contract

To maintain a cause of action for breach of contract, Ohio law requires privity of contract. *Zona v. Lincoln Log Homes, Inc.*, 181 F.3d 106, at *3 (6th Cir 1999)(citing *Mahalsky v. Salem Tool Co.*, 461 F.2d 581, 584 (6th Cir. 1972); *Cincinnati, Hamilton & Dayton RR. Co. v. Metro. Nat. Bank*, 54 Ohio St. 60, 68 (1896). Here, Eves does not dispute that Defendants AIG were not parties to the contract: "[t]he sole basis for the Moving Defendants' motion is that they are not parties to plaintiff's insurance contract, nor are they in privity of contract. *While perhaps accurate*, this statement is not dispositive..." (DKT. 18)(emphasis added). Contrary to Eves' argument, lack of privity is dispositive to the breach of contract claim.

Eves does not offer any authority to support that Defendants AIG can be held liable for

3

breach of contract notwithstanding the fact that they are not parties to the Policy. Rather, Eves relies on *Dellaira v. Farmers Ins. Exchange*, 102 P.3d 111, 116 (N.M. Ct. App., 2004) and *Wolf v. Prudential Ins. Co. of America*, 50 F. 3d at793, 797 (10th Cir. 1995), to show that absent a contractual relationship, a duty of good faith extends to an entity that functions as an insurer and manages the claims. Breach of contract and breach of a duty of good faith are separate claims with different elements, and these cases do not alter Ohio's requirement for privity of contract in a breach of contract claim. In fact, in both *Dellaira* and *Wolf*, the courts recognized that defendants that are not parties to a contract cannot be held liable for breach of contract. *Dellaira*, 102 P.3d at 116 ("Plaintiffs conceded that they have no colorable claim for breach of the insurance contract..."); *see also Wolf*, 50 F.3d at 797 (10th Cir. 1995) (holding a breach of contract claim fails under third party beneficiary theory). Eves does not sufficiently allege that a contractual relationship exists between himself and AIG. Therefore, his complaint fails to plead a breach of contract claim.

Accordingly, AIG's Motion for Dismiss Count I is **GRANTED**.

### B. Bad Faith

Having concluded that Eves failed to allege that a contractual relationship exists between he and AIG, the sole remaining issue is whether Eves' claim for bad faith against AIG can survive, absent a contractual relationship. The duty of good faith is based on the relationship between an insurer and its insured. *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St. 3d 272, 276 (1983). Ohio courts have generally held that a duty of good faith arises from the contractual relationship between an insured and insurer. *Id.*; *see also Gillette v. Estate of Gillete*, 837 N.E.2d 1283, 1287 (Ohio App. Ct. 2005)("In order for an insured to assert a breach of the duty of good faith, the insured and insurer must share a contractual relationship..."); *see also Eastham v. Nationwide Mut. Ins. Co.*, 586 N.E.2d

1131, 1133 (Ohio App. Ct. 1990)("we believe that liability for bad faith must be strictly tied to the implied-in-law covenant of good faith and fair dealing arising out of the underlying contractual relationship"). Several jurisdictions, however, have carved out an exception to this general rule by allowing a bad faith claim to survive against entities that do no have privity of contract, but function as an insurer and manage insurance claims.

No Ohio court has directly ruled on this issue, but in *Dombroski v. Wellpoint Inc.*, 879 N.E. 2d 225, 235-38 (Ohio App. Ct. 2007), *reversed on other grounds*, 119 Ohio St. 3d 506 (2008), an Ohio appellate court noted, in dicta, that an insured may pursue a bad faith claim against an entity that manages the insurance policy, even where the insured can not establish privity of contract with that entity. The *Dombroski* court looked to other jurisdictions to develop a "management theory" that applies "when one insurance company hires or forms another company to manage it." *Dombroski* 879 N.E. 2d at 236. Management theory extends the duty or good faith to the managing entity because it assumes the duties of the insurance company. *Id.* at 236-37. *Dombroski* hypothesized that "if the allegations of the complaint allege a management theory scenario, then the [bad faith] action could be pursued against the defendants for whom the theory applies." *Id.* at 237.

In developing the management theory, the *Dombroski* court relied heavily on *Dellaira v. Farmers Ins. Exchange*. In *Dellaria*, the New Mexico court of appeals held that an entity owed a duty of good faith and fair dealing to an insured, even absent privity of contract, because the entity "had primary control over benefit determinations, assumed some of the insurance risk of loss, undertook many of the obligations and risks of an insurer, and had the power, motive, and opportunity to act unscrupulously in the investigation and servicing of insurance claims." *Dellaria*, 102 P.3d at 114. The court explained that an entity that controls the claim-determination process

5

may have an incentive similar to that of an unscrupulous insurer to delay payment or coerce an insured into a diminished settlement. *Id. Dombroski* recognized that the management entity is acting as an insurer, and the it "should be bound within the special relationship created through the insurance contract." *Dombroski* 879 N.E. 2d at 237. Therefore, "[a]n insured's expectations of good faith handling and ultimate determination of his or her claim for the benefits by the insurer extends no less to an entity that both handles and determines the claim than to the insurer issuing the policy. *Id.*(*citing Dellaria*, 102 P.3d at 114).

Numerous other courts have also extended the duty of good faith to parties that are not privy to an insurance contract. *See Wolf*, 550 F. 3d at 797("the analysis should focus more on the factual question of whether the administrator acts like an insurer such that there is a special relationship between the administrator and insured that could give rise to a duty of good faith"); *see also Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 469 (Colo. 2003)("When a third-party administrator performs many of the tasks of an insurance company and bears some of the financial risk of loss for the claim, the administrator has a duty of good faith and fair dealing to the insured in the investigation and servicing of the claim"). *In Dombroski*, the Ohio court relied on its sister jurisdictions in noting that such a cause of action might be available to an Ohio plaintiff. AIG, however, tries to limit the "management theory" rule and distinguish it from the case sub judice.

AIG contends that *Dombroski* only envisioned applying the management theory where the insured is without recourse from its insurer. For support, AIG points to *Dombroski's* reliance on *Delos v. Farmers Ins. Group, Inc*. 93 Cal App. 3d 642 (1979)(allowing a bad faith claim absent privity of contract), which was later limited to its facts and the situation "where the insured would be without redress unless it could sue the [management entity]." *Filippo Industries, Inc. v. Sun Ins.*

*Co of New York*, 74 Cal. App. 4th 1429, 1443-44 (1999). The *Dombroski* court, however, *expressly acknowledged* this limitation, but still found the reasoning in *Delos* to be persuasive. *Dombroski*, at 236. ("Regardless [of *Filippo*], other states have also recognized this management theory as a basis for liability when there is not privity"). *Dombrowski*, as well as the decisions it relies upon from other courts, make clear that the chief concern is preventing an insurer from insulating itself through the device of the management company, and disallowing a plaintiff redress from the entity that is potentially causing the harm. *Id.*; *Gatecliff v. Great Republic Life Ins. Co.*, 821 P.2d 725, 730 (Ariz. 1991). Therefore, AIG's attempt to limit the scope of the management theory is unpersuasive.

AIG fails to distinguish this case from the cases that developed the "management theory". AIG first claims that this case is distinguishable from *Wolf* because "Plaintiff's claim for bad faith does not arise out of a first party claim, but rather from the third party claims asserted against him…"(Dkt. 19 at 3). Furthermore, the Defendants claim that they are "strangers to the policy", and therefore not liable under the management theory. (*Id.*). The court finds these arguments to be unpersuasive.

The management theory arises from the relationship between the administrator an insured that may give rise to a duty of good faith. *Dombroski*, at 236. Eves is the insured under the Policy, and he is alleging AIG handles all of the claims, coverage, and payments for its Member and/or affiliated insurance companies. (Compl. 2). Here, Eve's claim is a first party claim that arises out of the alleged relationship between himself and AIG. Accu-Check is the third party claimant, and neither party alleges the duty extends to Accu-Check. AIG also contends that it is a stranger to the policy, meaning that it and Eves do not have an insurer-insured relationship. AIG cites *Lewis v. American General Assurance Co.*, 2001 WL 36160929 (W.D. Okla. Feb, 26, 2001), to support its

7

contention that it is a "stranger to the policy". In *Lewis,* however, the plaintiff did not mention the management entity defendant, American General Insurance Corporation, in the complaint "other than to: 1) mention that American General Corporation instituted a risk-management program; and 2) detail American General Corporation's financial status. *Lewis*, 2001 WL 36160929 at *2. The court held absent some additional showing of an insured-insurer relationship, the management company may not be held liable for bad faith. *Id.* Lewis is distinguishable from this case because here Eves asserted additional facts alleging an insured-insurer relationship between him and AIG. The complaint alleges that AIG manages the claims, coverage, and payments of its affiliates. Eves' pleadings are sufficient to show that AIG is not a stranger to the policy.

Based on the Ohio appellate court's treatment of the "management theory" in *Dombroski*, along with the additional decisions from other jurisdictions, this Court concludes that Ohio would likely recognize the "management theory", and allow a bad faith claim when an insurance company forms or hires another company to manage its or its claims, even when there is no privity of contract between the management company and the insured. *Dombroski*, at 237. Where a state appellate court has resolved an issue to which the high court has not spoken, "we will normally treat [those] decisions…as authoritative absent a strong showing that the state's highest court would decide the issue differently. *Garrett v. Akron-Cleveland Auto Rental, Inc*. 921 F. 2d 659, 662 (6th Cir. 1990).

In addition to attempting to distinguish the management theory, AIG offers two cases in support of its claim that absent a contractual relationship, a bad faith claim must be dismissed. First, AIG relies upon *National Recovery Agency, Inc. v. AIG Technical Services, Inc.*, No. 4:05CV0033 2005 WL 2100702 (M.D. Pa. Aug 26, 2005). In *National Recovery*, the court dismissed the defendants from a claim of breach of contract and bad faith because they were not parties to the

8

insurance contract. *Id.* at *16 (explaining the plaintiff did not allege that AIGTS was an insured under the relevant Pennsylvania statute, nor did the plaintiff allege that Illinois National was an agent for either AIG or AIGTS). The Defendant also points to *Sullivan v. American International Group, Inc.*, No. 5:07-254-JMH 2008 WL 4056366 (E.D.Ky. Aug 27, 2008). In *Sullivan*, the court dismissed the defendant because the presence of a contract of insurance was required for a violation of the Kentucky Unfair Claims Settlement Practices Act, KRS 304.12-230. Therefore the allegations of violations of KRS 304.12-230 failed absent a valid contract. *Id.* at *3. Both of these cases interpret foreign states' specific bad faith statutes, which Ohio law does not have, and neither case significantly addresses the management theory that is the crux of the dispute here. Neither *National Recovery* nor *Sullivan* provide this Court with guidance on how Ohio's highest court would rule in regard to this issue.

The remaining inquiry is to determine whether Eves' complaint contains sufficient factual allegations to raise a right to relief above the speculative level. *Twombl*y, 550 U.S. at 556. In his complaint, Eves' alleges AIG "handles all of the claims, coverage, and payments for its Member and/or affiliated insurance companies." (Compl. ¶ 2). Eves claims that the Defendants' actions leave him exposed to an excess judgment in excess of $1,500,000. (*Id.* at ¶ 19). This amount arises from AIG's failure to enter into good faith settlement discussions despite settlement offers from Accu-Check. Eves alleges that the actions of defendants constitute a breach of a duty of bad faith. (*Id*. at ¶ 26-31). These factual allegations are sufficient to plead that a special insured-insurer relationship exists under the *Dombroski* "management theory" scenario. Eves has, therefore, met his pleading burden under Fed. Civ. Rule 8.

Accordingly, AIG's Motion to Dismiss Count II is **DENIED**.

## V. CONCLUSION

For the foregoing reasons, this Court **GRANTS** AIG's Motion to Dismiss as to Count I breach of Contract, and **DENIES** AIG's Motion to Dismiss as to Count II bad faith.

**IT IS SO ORDERED.**

                                                **s/Algenon L. Marbley**
                                                **ALGENON L. MARBLEY**
                                                **UNITED STATES DISTRICT JUDGE**

**Dated: February 22, 2010**